UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TIM KARTH and ABRAHAM KISWANI,<br><br>            Plaintiffs,<br><br>v.<br><br>KERYX BIOPHARMACEUTICALS, INC., RON BENTSUR, SCOTT A. HOLMES, GREGORY P. MADISON, and JAMES F. OLIVIERO,<br><br>            Defendants. | No. 1:16-cv-11745-DJC |

**DEFENDANTS' MOTION TO QUASH THIRD-PARTY SUBPOENAS AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF**

The Keryx Defendants[1/] respectfully move this court to enter a protective order quashing subpoenas issued to Norwich Pharmaceuticals, Inc. ("Norwich") and Patheon Manufacturing Services LLC ("Patheon") because both subpoenas seek discovery not relevant to the claims remaining in this case. The Court's Memorandum and Order of July 19, 2018[2/] ("July 19 Order") dismissed the Plaintiffs' claims with respect to statements by the Keryx Defendants in February 2016 and April 2016 regarding the sales forecasts for Auryxia, a medication developed by Keryx, and thereby substantially limited the remaining claims in the case.[3/] Discovery must therefore be

---

[1/]   Defendants Ron Bentsur, Scott A. Holmes, Gregory P. Madison, James F. Oliviero and Keryx Biopharmaceuticals, Inc. ("Keryx"), are collective referred to herein as the "Keryx Defendants."

[2/]   ECF No. 50.

[3/]   The Plaintiffs' First Amended Class Action Complaint does not assert that the February 2016 statement was misleading, yet the Plaintiffs argued it was misleading in their opposition to the Keryx Defendants' motion to dismiss. *Compare* Compl. ¶ 66 (ECF No. 25) ("nothing in [the February 25, 2016 press] release is alleged to be materially false and/or misleading at the time it was issued") *with* Pl's Opp. to Mot. to Dismiss at 6 (ECF No. 42) ("On February 25, 2016, Keryx issued a misleading press release… .").

1

confined to matters relevant to the surviving claims and defenses and must be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1) (limiting discovery to matter relevant only to claims and defenses); see *In re Stone & Webster, Inc. Sec. Litig.*, No. 00-10874-RWZ, 2006 U.S. Dist. LEXIS 71288, at *14 (D. Mass. Sep. 29, 2006) (denying discovery "not clearly limited, either in time or scope" to surviving claims because "defendants should not be burdened with discovery not targeted to the issues in play"); *Enargy Power (Shenzhen) Co. v. Wang*, No. 13-11348-DJC, 2014 U.S. Dist. LEXIS 67708, at *6 (D. Mass. May 16, 2014) ("Rule 45 subpoena must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)"). Despite this, the Plaintiffs have served expansive subpoenas to Keryx's manufacturing partners, Norwich and Patheon (copies of which are attached here as Exhibits A and B to the Declaration of John F. Sylvia, Esq. ("Sylvia Decl.")). Both subpoenas are wholly unrelated to the surviving claims, let alone proportional to the needs of the case. Accordingly, the Keryx Defendants seek the entry of an order pursuant to Rule 26(c) and 45 of the Federal Rules of Civil Procedure quashing both subpoenas.

## BACKGROUND

Keryx is a biopharmaceutical company that has developed Auryxia, a medication approved by the U.S. Food and Drug Administration ("FDA") for the treatment of hyperphosphatemia in patients with chronic kidney disease. Keryx outsources the process of manufacturing Auryxia's active pharmaceutical ingredient ("API" or "drug substance"), and it also outsources the process of converting the API into a tablet ("drug product"). On March 12, 2013, Keryx stated in its Form 10-K that it expected it would "rely on a single contract manufacturer to produce [Auryxia]."

Consistent with this statement, in January 2014, Keryx contracted with Norwich to convert the API into a tablet. Norwich did not manufacture the drug substance itself; Keryx used other contractors for that first step. In the summer of 2016, Norwich began to experience difficulties in

the conversion process, and on August 1, 2016 Keryx disclosed that the manufacture of drug product would be suspended until Keryx and Norwich could determine what was causing the difficulty. Keryx did not engage Patheon to convert API into tablets until after it disclosed this supply interruption to the market. Consequently, Keryx's contract with Patheon did not start until after the end of class period alleged in this case, and after Keryx allegedly made all of the "misstatements" alleged by the plaintiffs.

Pursuant to the July 19 Order, this Court dismissed Plaintiffs' First Amended Class Action Complaint (the "Complaint") in part. Specifically, the Court dismissed the Plaintiffs' claims that "the Defendants continued to provide positive forward guidance in February 2016 and April 2016 despite being aware at the time of production problems at Norwich." ECF No. 50 at 6. The Court also found that the allegations the Plaintiffs sought to add in the second amended complaint related only to the dismissed claim, and therefore denied as futile leave to amend the Complaint to include various statements made by Keryx after the class period. *Id*. at 11. The only surviving allegations fall into two categories: (1) Keryx referring in public filings to "contract manufacturers" in the plural, rather than the singular, and (2) Keryx stating in its April 1, 2016 Preliminary Schedule 14A that management had achieved 100% performance of its 2015 corporate performance goal of obtaining regulatory approval of an additional contract manufacturer.[4/]

On August 2, 2018, the Plaintiffs issued Subpoenas to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Civil Action to Norwich (the "Norwich

---

[4/]   In 2015, Keryx accurately reported a "100% achievement" of the goal of obtaining regulatory approval of an additional "contract manufacturer." Specifically, on December 22, 2015, the European Medicines Agency, the European Equivalent to the U. S. Food and Drug Administration, issued a favorable opinion on Keryx's request to add an active substance ("AS") manufacturer. *See* Sylvia Decl., Ex. F. - European Medicines Agency, Ferexis: Procedural Steps Taken and Scientific Information After Authorisation at p. 3 (entry dated Dec. 22, 2015).

Subpoena") and Patheon (the "Patheon Subpoena"; together with the Norwich Subpoena, the "Subpoenas").  Importantly, the Subpoenas only seek documents relevant to the *manufacture* of the Auryxia drug product; they do not seek any information at all relevant to the number of contract manufacturers used by Keryx, or regulatory approval of an additional contractor in 2015.  The Norwich Subpoenas demand production of "[a]ll Documents (including Communications) between [Norwich] and Keryx" concerning: (1) the manufacture of Auryxia; (2) the yield of production of Auryxia; (3) Norwich's investigation of manufacturing problems related to Auryxia; (4) the 2016 temporary supply interruption of Auryxia; and (5) Norwich's interactions with Keryx quality and technical teams.  *See* Sylvia Decl., Ex. A.  The Patheon Subpoena demands production of "[a]ll Documents (including Communications) between [Patheon] and Keryx" concerning: (1) Patheon's manufacture of Auryxia; (2) Norwich's manufacture of Auryxia; (3) the 2016 temporary supply interruption of Auryxia; and (4) Patheon's interactions with Keryx quality and technical teams.  *See* Sylvia Decl., Ex. B.

Both Norwich and Patheon have served objections to the Subpoenas.  *See* Sylvia Decl., Exs. C & D.  Patheon objected on the grounds, among other things, that the plaintiffs have not taken reasonable steps to narrowly tailor their requests.  *See* Sylvia Decl., Ex. D at 2.  Similarly, Norwich objected on the grounds that the information sought is neither relevant, not proportional to the needs of the case. *See* Sylvia Decl., Ex. C at 2. Norwich also indicated that the information sought by the plaintiffs included Keryx's confidential and proprietary information. *See id.* at 3.  To date, no documents have been produced in response to either subpoena.  On October 11, 2018, Norwich counsel emailed counsel for the plaintiffs indicating that Norwich does not intend to incur the burden and expense of collecting and producing documents responsive to the subpoena until Keryx's relevance objections are resolved.   *See* Sylvia Decl., Ex G.

Additionally, by letter dated August 23, 2018, Patheon notified Keryx that Patheon will seek to recover the costs and expense incurred in responding to the subpoena under the indemnity provisions of its contract with Keryx, meaning that the burden and unnecessary cost associated with these subpoenas may well fall on Keryx.  *See* Sylvia Decl. Ex. E at 1.

## ARGUMENT

### A. The Keryx Defendants Have Standing to Quash the Subpoenas.

"A party has standing to quash a subpoena served on a non-party if he or she has a personal right or privilege with respect to the requested information." *Enargy Power (Shenzhen) Co. v. Wang*, No. 13-11348-DJC, 2014 U.S. Dist. LEXIS 67708, at *7 n.4 (D. Mass. May 16, 2014). Even a "minimal" or "exceedingly small" interest is sufficient to confer standing, so long as a party has "*some* personal right of privilege in the information sought." *Patrick Collins, Inc. v. Does 1-38*, 941 F. Supp. 2d 153, 160 (D. Mass. 2013) (emphasis in original); *see DeGrandis v. Children's Hosp. Boston*, 203 F. Supp. 3d 193, 198 (D. Mass. 2016) ("The personal right or privilege claimed need not be weighty").

Here, the Keryx Defendants have three separate interests that support their standing to challenge the Subpoenas.  First, Keryx has standing to challenge the subpoenas issued to its business partners because the breadth of the subpoenas could harm Keryx's business relationships with Norwich and Patheon.  *See Accusoft Corp. v. Quest Diagnostics, Inc.*, No. 12-40007-FDS, 2012 U.S. Dist. LEXIS 54216, at *32-33 (D. Mass. Apr. 18, 2012) (defendant had standing to challenge subpoena where "the breadth and intrusiveness of the subpoenas will cause a degree of harm to defendants' customer relationships that is sufficient to satisfy the interest requirement of Rule 26(c)").  Second, the Subpoenas seek confidential information, in which the Keryx Defendants have personal rights sufficient to confer standing.  *See ReliaStar Life Ins. Co. v.*

*Warrior*, No. 06-2486-CM-DJW, 2007 U.S. Dist. LEXIS 66877, at *10 (D. Kan. Sep. 7, 2007) (party had standing to challenge subpoena seeking third-parties' file containing party's information). Third, the Keryx Defendants have standing because Pantheon has asserted that Keryx may be liable for Patheon's costs of complying with a subpoena that seeks irrelevant information. *See Liberty Mut. Ins. Co. v. Donegan*, 746 F.3d 497, 502 (2d Cir. 2014) (party had standing to challenge subpoena where it faced liability for costs incurred in third-party complying with it); *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005) ("To the extent that Defendants would be required to incur third party discovery costs that rise to the level of an undue burden for Defendants, Defendants have standing to quash on those grounds."). *See also Green v. Cosby*, No. 3:14-cv-30211-MGM, 2017 U.S. Dist. LEXIS 55229, at *8 (D. Mass. Apr. 11, 2017) (court may limit the scope of subpoena regardless of a party's standing because "Federal Rule of Civil Procedure 26(b)(2)(C)(iii) requires the court to limit the frequency or extent of discovery… if it determines that the proposed discovery is outside the scope permitted by Rule 26(b)(1)").

### B. The Subpoenas Seek Documents Only Relevant to the Dismissed Claim.

The Court should quash the Subpoenas in their entirety because the information sought bears no relation to the remaining claims in the case. Rule 26(b)(1) of the Federal Rules of Civil Procedure limits the scope of discovery to "matter that is relevant to any party's claim or defense and proportional to the needs of the case." Accordingly, courts have repeatedly invoked Rule 26(b)(1) to deny document discovery that seeks information only related to claims that have previously been dismissed. *See, e.g., Murphy v. Harmatz,* No. 3:13-cv-12839, U.S. Dist. LEXIS 167569, at *10-11 (D. Mass. Dec. 5, 2016) (denying document discovery where documents sought were not related to plaintiff's remaining claims); *Vaigasi v. Solow Mgmt. Corp.*, No. 11-cv-5088,

2016 U.S. Dist. LEXIS 18460, at *39 (S.D.N.Y. Feb. 16, 2016) (denying document discovery into claims that had been dismissed); *St. John Lacorte v. C.R. Bard, Inc*., No. 11-cv-1250, 2015 U.S. Dist. LEXIS 178303, at *15 (E.D.La. Aug. 18, 2015) (denying document discovery where "[s]uch information would be relevant only to the now-dismissed claims").

This principle controls here. Plaintiffs cannot meet their burden of establishing the relevance of the documents they seek because the requests in the Subpoenas do not relate to the claims and defenses remaining in the case. *See Murphy v. Harmatz*, 2016 U.S. Dist. LEXIS at *9 ("party seeking information in discovery has the burden of showing its relevance"). As a result of the Court's July 19 Order, the only remaining issues in this case relate to (1) Keryx allegedly referring in public filings to contract manufacturers in the plural, rather than the singular, and (2) Keryx allegedly stating in its April 1, 2016 Preliminary Schedule 14A that the company had achieved 100% performance of its 2015 corporate performance goal of obtaining regulatory approval of an additional contract manufacturer. None of the documents requested in either of the Subpoenas are relevant to these two issues.

First, the Subpoenas seek from both Norwich and Patheon "[a]ll Documents (including Communications) concerning the 2016 temporary supply interruption of Auryxia." Sylvia Decl., Ex. A at Request No. 4; Ex. B at Request No. 2. Any information relating to a supply interruption is irrelevant to why Keryx referred to contract manufacturers in the plural, rather than the singular, and has nothing to do with whether Keryx had had achieved 100% performance of its 2015 corporate performance goal of obtaining regulatory approval of an additional contract manufacturer. Rather, these requests only seek documents relevant to the plaintiffs' dismissed theory: that the Keryx Defendants purportedly continued to provide positive forward-looking guidance in February and April 2016, despite being allegedly aware of production problems at

Norwich. Accordingly, any documents responsive to these request fall outside the scope of allowable discovery under Rule 26(b)(1).

Second, the Subpoenas seek "[a]ll documents concerning Your interaction with Keryx quality and technical teams." Sylvia Decl., Ex. A at Request No. 5; Ex. B at Request No. 3. Again, these requests are relevant only to the plaintiffs' dismissed theories with respect to production problems. They have nothing whatsoever to do with the remaining claims in the case. Norwich's or Patheon's communications with the Keryx quality and technical teams cannot possibly provide information regarding why Keryx referred to contract manufacturers in the plural. Nor could such communications involve Keryx's goal of obtaining regulatory approval of an additional manufacturer in 2015.

Third, the Patheon Subpoena requests "[a]ll documents concerning Norwich's manufacture of Auryxia." Sylvia Decl., Ex. B at Request No. 4. Again, any document that Patheon could have that would be responsive to this request is irrelevant to the surviving claims in this case. The specifics of Norwich's manufacture of Auryxia have no bearing on why Keryx referred to contract manufacturers in the plural, or Keryx's goal of obtaining regulatory approval of an additional manufacturer other than Norwich.

Fourth, the Norwich Subpoena seeks "[a]ll Documents (including Communications) concerning the yield production of Auryxia" and "[a]ll Documents (including communication concerning [Y]our investigation of manufacturing problems related to Auryxia." Sylvia Decl., Ex. A at Request Nos. 2 & 3. Again, it is clear that any documents Norwich may have that would be responsive to these requests relate solely to the dismissed claims regarding production problems.

Lastly, the Subpoenas seek "[a]ll Documents (including Communications) between You and Keryx concerning the manufacture of Auryxia." Sylvia Decl., Ex. A at Request No. 1; Ex. B

at Request No. 1. Once again, documents and communications concerning the *manufacture* of Auryxia relate only to the dismissed claim.  They have nothing to do with why Keryx referred to contract manufacturers in the plural, rather than the singular, and have nothing to do with whether Keryx had had achieved 100% performance of its 2015 corporate performance goal of obtaining regulatory approval of an additional contract manufacturer.  Accordingly, these requests also fall outside the scope of allowable discovery under Rule 26(b)(1).

## CONCLUSION

The document requests in the third party subpoenas issued to Norwich and Patheon fall outside the scope of discovery permitted by Rule 26 of the Federal Rules of Civil Procedure because they seek information that is only relevant to claims that the Court has already dismissed. Accordingly, Keryx respectfully requests that the Court quash both the Norwich and Patheon Subpoenas in their entirety.

Respectfully submitted,

KERYX BIOPHARMACEUTICALS, INC., RON BENTSUR, SCOTT A. HOLMES, GREGORY P. MADISON, and JAMES F. OLIVIERO

By their attorneys,

/s/  *John F. Sylvia*
John F. Sylvia, BBO# 555581
Laurence A. Schoen, BBO #633002
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
 AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
Tel: (617) 542-6000
JSylvia@mintz.com

Dated: October 12, 2018

**Rule 26(c)(1) and Local Rule 7.1(a)(2) Certification**

Counsel for the Defendants hereby certifies that the parties have conferred in good faith pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure and Local Rule 7.1(a)(2) regarding the issues raised in this Motion, but were unable to reach agreement.

/s/ *Laurence A. Schoen*
Laurence A. Schoen

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of October, 2018, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ *John F. Sylvia*
John F. Sylvia

81632172v.1